UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

WILLIAM L. WHITE, JR.,

    Plaintiff,

v.

INDIANA DEPT. OF CORRECTION
*et al.*,

    Defendants.

CAUSE NO. 3:18-CV-992 DRL-MGG

OPINION AND ORDER

William L. White, Jr., a prisoner proceeding without counsel, was granted leave to proceed on an Eighth Amendment claim against Officer Tyiesha Hunter and Officer Paul Hegwood[1] for failing to protect him from an attack by another inmate. Specifically, he alleged that while he was attacked by a mentally ill inmate in the prison cafeteria, these two officers "stood by and watched the attack take place without any effort to stop the attack." (ECF 1 at 2.) The parties have filed cross-motions for summary judgment.

Before turning to the facts, the court must address a few housekeeping matters. Mr. White was permitted to proceed on a claim against Officer Hunter, but she is no longer employed by the Indiana Department of Correction and was never served with the complaint. The docket reflects that the U.S. Marshals Service twice attempted to serve her at her last known address, but by that time she was no longer residing there. Mr.

---

[1] This defendant is identified in the complaint as Officer "Heagwood." The court uses the correct spelling of his name in this opinion.

White was granted until November 2, 2020 to provide any additional information he had regarding Officer Hunter's whereabouts so that service could be effected on this defendant. He was cautioned that if he did not respond, Officer Hunter would be dismissed pursuant to Federal Rule of Civil Procedure 4(m). Mr. White did not provide any additional information about Officer Hunter or otherwise respond to the order, and the court has exhausted all available avenues to effect service over Officer Hunter. Therefore, she will be dismissed under Rule 4(m).

Second, Mr. White has filed a motion entitled "Motion of Planned Discovery." Notwithstanding the label, the court considers this document to have been filed in support of Mr. White's motion for summary judgment, as it includes declarations from other inmates about the events underlying the complaint. The motion is granted to the extent that the court has duly considered the attached materials in reaching this opinion.

Turning to the facts, Mr. White is an inmate at Indiana State Prison (ISP). Officer Hegwood was employed as a guard at ISP from 2004 to 2020, and was working on July 2, 2018, the date of the incident underlying the complaint. (ECF 50 ¶ 2.) On that date, Officer Hegwood was in the prison cafeteria in the early morning hours supervising the inmates while they had breakfast. (*Id.* ¶ 3.) Around 5:00 a.m., he heard a "commotion" a few feet behind him. (*Id.* ¶ 4.) He believed it to be "the beginning of a fight" between two inmates. (*Id.* ¶ 5.) He turned around and immediately moved toward the two inmates; as he got closer, he saw inmate Timothy Nealy attack Mr. White "with a sharp object in one hand while holding another weapon in his other hand." (*Id.* ¶ 6.) Officer Hegwood immediately called for assistance on his radio. (*Id.* ¶ 7.) At that point, Mr. White pulled

2

away from inmate Nealy and began running toward the cafeteria exit. (*Id.* ¶ 8.) Inmate Nealy attempted to follow him, but Officer Hegwood "physically placed [his] body between [inmate Nealy's] path out of the dining room and threatened to deploy [his] chemical agent . . . if he did not drop the weapons in his hands." (*Id.* ¶ 9.) At the same time, other correctional officers arrived and blocked inmate Nealy's path. (*Id.* ¶ 10.) Officer Hegwood and the other officers were able to convince inmate Nealy to drop his weapons, and he was secured with mechanical restraints. (*Id.* ¶ 11.) This entire incident was captured on the prison surveillance camera. (*Id.* ¶ 15; ECF 48.)

Officer Hegwood attests, without contradiction by Mr. White, that he had no prior knowledge that inmate Nealy intended to attack Mr. White, nor did Mr. White ever convey to him that he was at risk of harm from this inmate.[2] (ECF 50 ¶¶ 12-14.) Mr. White was taken to the medical unit immediately after this incident. (ECF 40-1 at 3-4.) Medical records Mr. White has submitted reflect that the nurse noted a "superficial injury to skin" on Mr. White's abdomen that was no longer actively bleeding, with a "[f]ew small blood spots" on the left side of his shirt. (*Id.*) The nurse cleaned the wound with a mild antiseptic soap and water and released him to his housing unit. (*Id.* at 4.) Her notations reflect that while she was cleaning the wound, Mr. White joked with her about "his fat stomach saving him." (*Id.*)

---

[2] Mr. White acknowledged in his complaint that he himself had no prior warning of the attack, which was apparently precipitated by the fact that inmate Nealy suffers from a mental illness and was "hearing voices" on the date in question. (ECF 1 at 2.) Mr. White alleged in his complaint that inmate Nealy later apologized to him for his actions. (*Id.*)

Pursuant to Federal Rule of Civil Procedure 56, the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Daugherty v. Page*, 906 F.3d 606, 610 (7th Cir. 2018) (citation omitted). In deciding whether a genuine dispute of fact exists, the court must "consider all of the evidence in the record in the light most favorable to the non-moving party, and . . . draw all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Dunn v. Menard, Inc.*, 880 F.3d 899, 905 (7th Cir. 2018) (citation omitted). When deciding cross-motions for summary judgment, the court must "constru[e] the evidence and all reasonable inferences in favor of the party against whom the motion under consideration is made." *Durable Manuf. Co. v. U.S. Dep't of Labor*, 578 F.3d 497, 501 (7th Cir. 2009). At the summary judgment stage, the court cannot "weigh conflicting evidence" or "make credibility determinations," as both of these functions "are the province of the jury." *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704-05 (7th Cir. 2011) (citations omitted). Instead, the court's sole function is "to determine whether there is a genuine issue for trial." *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (citation omitted).

The Eighth Amendment imposes a duty on prison officials "to take reasonable measures to guarantee the safety of inmates" and to "protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). However, "prisons are dangerous places," as "[i]nmates get there by violent acts, and many

4

prisoners have a propensity to commit more." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008). Therefore, a failure-to-protect claim cannot be predicated "merely on knowledge of general risks of violence in a detention facility." *Brown v. Budz*, 398 F.3d 904, 913 (7th Cir. 2005). To prevail, the plaintiff must establish that "the defendant had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago v. Wells*, 599 F.3d 749, 756 (7th Cir. 2010).

In support of his motion for summary judgment, Mr. White argues that Officer Hegwood "didn't protect him to the best of [his] ability." (ECF 40 at 1). However, that is not the standard for proving an Eighth Amendment violation. "[N]egligence or even gross negligence" is not sufficient, and instead the plaintiff must prove that the defendant's conduct was "deliberate, malicious, or reckless rather than mistaken." *Giles v. Tobeck*, 895 F.3d 510, 513 (7th Cir. 2018) To be deliberately indifferent to an attack on an inmate, the defendant's response "must be so inadequate that it amounts to a reckless disregard for the risk, and effectively condones the attack." *Id.* (citation and internal quotation marks omitted). "That a response did not avert the risk does not mean it was unreasonable[.]" *Id.* (citation and internal quotation marks omitted).

The court has carefully viewed the surveillance video, and it shows that this entire incident lasted approximately a minute, and the interaction between inmate Nealy and Mr. White only a few seconds. The altercation began without any apparent warning directly behind where Officer Hegwood was standing; the officer immediately turned around, moved toward the two inmates, and made a call on his radio. The video does not

5

have audio capabilities, but Officer Hegwood appeared to be saying something to inmate Nealy. A few seconds later, Mr. White separated himself and left the cafeteria with inmate Nealy following him. Officer Hegwood moved quickly to get in front of inmate Nealy, thereby preventing him from exiting, and aimed his chemical spray directly at inmate Nealy. As other officers arrived, inmate Nealy dropped his weapons and the incident ended.

The record evidence, including the video, shows that Officer Hegwood was faced with a difficult situation, as he appeared to have been the only guard in a room crowded with inmates. Without any warning, an inmate appeared directly behind him holding weapons in both hands. Officer Hegwood immediately called for assistance and took other steps to end the altercation. Due to his actions and those of the other officers who answered his call for assistance, the incident ended without further injury to anyone. Although this incident was no doubt unpleasant for Mr. White, the medical records he has submitted reflect that he was not seriously injured. (ECF 40-1 at 3-4.) Whether Officer Hegwood might conceivably have acted "even faster and thereby reduced or prevented [Mr. White's] injuries, [] the mere failure of the prison official to choose the best course of action does not amount to a constitutional violation." *Giles*, 895 F.3d at 514.

Mr. White focuses on the fact that Officer Hegwood never used his chemical spray on inmate Nealy, submitting declarations from numerous inmates in support.[3] (*See* ECF

---

[3] The court notes that these statements aren't submitted as affidavits. (*See* ECF 40 at 4-14; ECF 41-1 to ECF 41-7.) Although the inmates appear to attest to the truth of their statements under penalty of perjury, the statements do not appear to be signed. Rather, the inmates' names are simply printed at the bottom of the page. Despite these procedural irregularities, the court will assume

40 at 4-14; ECF 41-1 to ECF 41-7.) But this fact is undisputed, as Officer Hegwood acknowledges as much in his own filings. (*See* ECF 50 ¶¶ 9-11.) The mere fact that Officer Hegwood did not immediately utilize his chemical spray does not prove deliberate indifference. As stated above, this incident occurred without warning and unfolded over a matter of seconds. Officer Hegwood was in a room full of inmates, and using his chemical spray was not without risks: given the close proximity of the individuals involved, diffusing the spray could have caused injury to Mr. White or inmates standing nearby, or could have resulted in Officer Hegwood himself becoming incapacitated. *See Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 726 (7th Cir. 2013) (observing that "pepper spray causes an intense pain and acts upon [one's] physiology"). Likewise, if he jumped in between the two inmates and got stabbed, this could have threatened the safety of all the inmates in the cafeteria. Under the circumstances, Officer Hegwood's actions fell far short of deliberate indifference. *See Giles*, 895 F.3d at 514 (concluding that guard reasonably responded to attack on inmate when she "called for back-up and waited for it to arrive, rather than jump into the fray herself"); *Shields v. Dart*, 664 F.3d 178, 181 (7th Cir. 2011) ("[C]orrectional officers who are present during a violent altercation between prisoners are not deliberately indifferent if they intervene with a due regard for their safety: A prison guard, acting alone, is not required to take the unreasonable risk of attempting to break up a fight between two inmates when the circumstances make it clear that such

---

that the inmates' accounts could not be presented in a manner that would be admissible at trial. *See* Fed. R. Civ. P. 56(c)(2).

action would put her in significant jeopardy." (citation and internal quotation marks omitted).)

To the extent Mr. White and the other inmates are claiming that Officer Hegwood simply stood by and "did nothing" during the altercation (*see* ECF 40 at 4), their accounts are belied by the surveillance video. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Thus, where video evidence discredits the plaintiff's version of events, summary judgment for the defendant is proper. *Id.*; *see also Jackson v. Angus*, 808 F. App'x 378, 382 (7th Cir. 2020) (concluding that inmate's assertions "do not create a factual dispute because they are clearly contradicted by video evidence"). It is clear from the video that Officer Hegwood acted quickly to try to protect Mr. White. Based on the record, no reasonable jury could find that Officer Hegwood was deliberately indifferent to Mr. White's safety.

Alternatively, Officer Hegwood argues that he is entitled to qualified immunity. (ECF 46 at 7-9.) "Under the doctrine of qualified immunity, government officials are liable for civil damages . . . only when their conduct violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Balsewicz v. Pawlyk*, 963 F.3d 650, 656 (7th Cir. 2020) (citations and internal quotation marks omitted). The doctrine "protects all but the plainly incompetent or those who knowingly violate the law." *Campbell v. Kallas*, 936 F.3d 536, 546 (7th Cir. 2019) (citation omitted). In evaluating a qualified immunity defense at the summary judgment stage, the court

considers (1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendant violated a clearly established right; and (2) whether the plaintiff has come forward with sufficient evidence to create a genuine dispute of fact as to whether the defendant in fact committed those acts. *Balsewicz*, 963 F.3d at 656.

"A right is clearly established when existing precedent has placed the statutory or constitutional question beyond debate." *Howell v. Smith*, 853 F.3d 892, 897 (7th Cir. 2017) (citation and internal quotation marks omitted). The "focus is on whether the [defendant] had fair notice that his conduct was unlawful." *Balsewicz*, 963 F.3d at 656-57 (citation, internal quotations marks, and alteration omitted). Put another way, "a right is clearly established only if every reasonable official would have understood that what he is doing violates that right." *Campbell*, 936 F.3d at 546 (citation and internal quotation marks omitted)).

The crux of Mr. White's argument appears to be that Officer Hegwood violated the Eighth Amendment by failing to immediately use chemical spray on inmate Nealy as soon as he saw the altercation unfolding. Yet Mr. White has not pointed to any clearly established law that would have made a reasonable officer in Officer Hegwood's position aware that he had such a duty. In fact, Mr. White did not file any response to Officer Hegwood's motion for summary judgment, despite being given the notice required by N.D. Ind. L.R. 56-l(f). (ECF 47.)

As stated above, the record reflects that this incident occurred quickly and without warning. Officer Hegwood acted promptly to call for assistance, took his chemical spray out of the holster, physically blocked inmate Nealy from exiting the room, and gave him

a direct order to drop his weapons. Ultimately he and the other officers were able to subdue inmate Nealy without the use of the chemical spray. Indeed, had Officer Hegwood acted too quickly in using his chemical spray, he could have been liable for injuring inmate Nealy or other inmates standing nearby. *See Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984)("[I]t is a violation of the Eighth Amendment for prison officials to use mace or other chemical agents in quantities greater than necessary[.]"); *Scruggs v. Pomeroy*, No. 3:17-CV-422-RLM-MGG, 2020 WL 3036334, 1 (N.D. Ind. June 4, 2020) (observing that the use of chemical spray is not always justified to restore order in the prison setting). Based on the record, the court cannot conclude that every reasonable guard in Officer Hegwood's position would have understood that he was required to immediately dispense his chemical spray under these circumstances. *See Campbell*, 936 F.3d at 546. He is therefore entitled to qualified immunity.

For these reasons, the court:

(1) DISMISSES Officer Hunter pursuant to Fed. R. Civ. P. 4(m);

(2) GRANTS the plaintiff's motion (ECF 41) as outlined herein;

(3) DENIES the plaintiff's motion for summary judgment (ECF 40);

(4) GRANTS Officer Hegwood's motion for summary judgment (ECF 45); and

(5) DIRECTS the clerk to enter judgment in favor of Officer Hegwood and to close the case.

SO ORDERED.

January 20, 2021             *s/ Damon R. Leichty*
                                                        Judge, United States District Court